ACCEPTED
02-17-00186-CV
SECOND COURT OF APPEALS
FORT WORTH, TEXAS
12/21/2017 5:50 PM
DEBRA SPISAK
CLERK

# 02-17-00186-CV

FILED IN
2nd COURT OF APPEALS
FORT WORTH, TEXAS
12/21/2017 5:50:29 PM
DEBRA SPISAK
Clerk

## COURT OF APPEALS

## SECOND DISTRICT OF TEXAS AT FORT WORTH

**OLD AMERICAN INSURANCE COMPANY**

**Appellant**

**v.**

**LINCOLN FACTORING, LLC**

**Appellee**

**Appeal from County Court at Law No. 1, Tarrant County, Texas**
**Hon. Don Pierson presiding (2015-005979-1)**

## APPELLEE'S BRIEF

**MICHAEL G. ENGFER**
**Texas Bar No. 24085296**
**6145 Wedgwood Drive**
**Fort Worth, Texas  76133**
**817-850-9800**
**817-850-9801 fax**
**mike@sryp.net**

**FRANK GILSTRAP**
**Texas Bar No. 07964000**
**Hill Gilstrap, PC**
**1400 West Abram Street**
**Arlington, Texas  76013**
**817-261-2222**
**817-861-4685 fax**
**fgilstrap@hillgilstrap.com**

**ATTORNEYS FOR APPELLEE**

**ORAL ARGUMENT REQUESTED**

## PARTIES AND COUNSEL

Appellant                        Old American Insurance Co.

David R. Sweat (appeal)
3705 West Green Oaks Blvd., Suite C
Arlington, Texas  76016

Andrew W. Seibert (trial)
Seibert Law Firm PC
6001 W. I20, Suite 205
Arlington, Texas  76017

Appellee                        Lincoln Factoring, LLC

Frank Gilstrap (appeal)
Hill Gilstrap, PC
1400 West Abram Street
Arlington, Texas 76013

Michael Engfer (trial and appeal)
6145 Wedgwood Drive
Fort Worth, Texas 76133

Judges                        Hon. Sergio L. DeLeon
Justice of the Peace, Place 5
350 West Belknap, Suite 112
Fort Worth, Texas 76196-0247

Hon. Don Pierson, Judge
County Court at Law No. 1
100 W. Weatherford St., Room 490
Fort Worth, Texas 76196-0240

# TABLE OF CONTENTS

PARTIES AND COUNSEL ...............................................................................1

TABLE OF CONTENTS ...................................................................................2

INDEX OF AUTHORITIES ...............................................................................6

STATEMENT OF THE CASE ...........................................................................13

FACTS ...............................................................................................................14

    The "death benefit" and the suicide exclusion ...............................................14

    The ADB and the additional exclusions .........................................................14

    The death and the assignment .........................................................................15

    Lincoln makes a claim .....................................................................................15

    The three claims ..............................................................................................16

    Old American delays payment ........................................................................17

    Lincoln sues and Old American pays ..............................................................18

    The litigation ...................................................................................................18

    The judgment ...................................................................................................19

SUMMARY OF THE ARGUMENT ..................................................................19

    Merits ...............................................................................................................20

        Coverage .....................................................................................................20

        Insurance Code ...........................................................................................20

Bad faith ...........................................................................................21

Treble damages..............................................................................21

Prompt payment ............................................................................21

Misrepresentation .........................................................................22

Declaratory Judgment....................................................................22

Forfeiture ......................................................................................23

Preservation ..................................................................................23

Capacity" and "standing" ......................................................................23

    a.   Old American's complaints involve capacity, not standing. .......24

    b.   The claims were assigned, and they were assignable. .................24

    c.   Direct standing under the Insurance Code. ..................................25

ARGUMENT PART ONE:  MERITS.................................................................25

1.    Old American was required to pay the $10,000 "death benefit"
when it received proof that the insured had died, regardless of
cause-of-death...........................................................................................25

2.    Bad faith:   Old American's obligation to pay the $10,000 death benefit was
"reasonably clear" when Lincoln first made its claim. ................................27

3.    Prompt payment:   Lincoln was entitled to recover 18% interest
and attorney's fees. ...................................................................................32

    The statute. .......................................................................................32

    No "good faith" defense.....................................................................33

    Application. ........................................................................................34

4.    Old American has waived any error as to the misrepresentation claims. .....34

The statute: ..................................................................35

Facts: .........................................................................35

5.   Old American also waived any error as to the award
     of attorney's fees under the Declaratory Judgments Act. ............................38

6.   Old American waived any defense under Section 1103.51
     of the Insurance Code. .................................................................40

7.   Lincoln is entitled to recover attorney's fees. ..............................................43

8.   Treble damages:   Old American acted "knowingly." ....................................44

9.   Old American failed to preserve error as to the calculation of
     interest, calculation of damages, or the award of treble damages. .................45

ARGUMENT PART TWO:   STANDING ..........................................................47

10.  Old American waived any error as to the assignment of claims
     by failing to raise it in the trial court. ...........................................................47

11.  Alternatively, Lincoln has standing to assert its own claims for
     "bad faith" and misrepresentation under Section 541.151 of the
     Code. ...........................................................................52

12.  Lincoln has standing to assert a "prompt payment" claim
     under section 542.060 of the Code. ...........................................................58

13.  Alternatively, the Insurance Code claims were assigned and
     they were assignable. ..................................................................60

          Were the claims assigned? .........................................................60

          Were the claims assignable? ......................................................60

14.  Lincoln does not have standing as to the claim under
     Section 542.003 of the Code. ...........................................................64

PRAYER .........................................................................65

CERTIFICATE OF SERVICE .........................................................................66

4

CERTIFICATE OF COMPLIANCE........................................................................66

# INDEX OF AUTHORITIES

Cases

*Aleman v. Zenith Ins. Co.*,
343 S.W.3d 817 (Tex.App.--El Paso 2011, no pet.).....................................29

*Allstate Ins. Co. v. Watson*,
876 S.W.2d 145 (Tex.1994) .........................................................................58

*Amanda v. Ins. Co. of North Am.*,
748 S.W.2d 210 (Tex.1998) .........................................................................29

*American Southern Ins. Co. v. Buckley*,
748 F.Supp.2d 610 (E.D.Tex.2010) .............................................................64

*Apex Fin. Corp. v. Garza*,
155 S.W.3d 230 (Tex.App.--Dallas 2004, pet. denied)................................40

*Barshop v. Medina County Underground Water Conservation Dist.*,
925 S.W.2d 618 (Tex.1996) .........................................................................40

*Basic Energy Service, Inc. v. D-S-B Properties, Inc.*,
367 S.W.3d 254 (Tex.App.--Tyler 2011) .....................................................47

*Berkley Regional Ins. Co. v. Philadelphia Indem. Ins. Co.*,
No. A-10-CA-3662-SS, 2011 WL 9879170,
2011 U.S.Dist. LEXIS 155 (W.D.Tex. Apr. 27, 2011) ................................64

*Brown & Brown of Texas, Inc. v. Omni Metals, Inc.*,
317 S.W.3d 361 (Tex.App.--Houston [1st Dist.] 2010, pet. denied) ............58

*Cash Rent-a-Car, Inc. v. Old American County Mut. Fire Ins. Co.*,
No. 01-09-00021-CV, 2010 WL 143482, 2010 Tex.App. LEXIS 250
(Tex.App.--Houston [1st Dist.] Jan. 4, 2010, no pet.)..................................60

*Casso v. Brand*,
776 S.W.2d 551 (Tex.1989) .........................................................................42

*Cater v. United Servs. Auto. Ass'n*,
27 S.W.3d 81 (Tex.App.--San Antonio 2000, pet. denied)..........................35

*Ceshker v. Bankers Commercial Life Ins. Co.*,
  558 S.W.2d 102 (Tex.Civ.App.--Tyler 1977) ................................................57

*Ceshker v. Bankers Commercial Life Ins. Co.*,
  568 S.W.2d 128 (Tex.1978) .......................................................................57

*Chapparal Operating Co. v. EnergyPro, Inc.*,
  No. 02-16-00471-CV, 2017 Tex. App. LEXIS 10091
  (Tex.App.--Fort Worth, Oct. 26, 2017, pet. filed).......................................39

*Coastal Liquids Transp., L.P. v. Harris County Appraisal Dist.*,
  46 S.W.3d 880 (Tex.2001) .......................................................................25

*Conley v. Tex. Bd. of Crim. Justice*,
  No. 03-08-00293-CV, 2010 WL 163292,
  2010 Tex.App.LEXIS 3011 (Tex.App.--Austin Apr. 2, 2010, no pet.) ........39

*Conn. State Dental v. Anthem Health Plans*,
  591 F.3d 1337 (11th Cir.2009) ...................................................................61

*Countrywide Home Loans, Inc. v. Howard*,
  240 S.W.3d 1 (Tex.App.--Austin 2007, pet. denied) ...................................40

*Cybiz, Inc. v. Gaskill*, No. 14-16-00405-CV, 2017 WL 1015560, 2017 Tex.App.
  LEXIS 2147 (Tex.App.--Houston [14th Dist.] March 14, 2017, no pet.).....47

*DamilerChrysler Corp. v. Enron*,
  252 S.W.2d 299 (Tex.2008) .......................................................................20

*Dean Vivian Homes, Inc. v. Sabera's Plumbing and Appliances, Inc.*,
  615 S.W.2d 921 (Tex.Civ.App.--Waco 1981, no pet.).................................41

*Douglas-Peters v. Choe & Holen P.C.*,
  No. 05-15-01538-CV, 2017 WL 836848, 2017 Tex.App.LEXIS
  1836 (Tex.App.--Dallas March 13, 2017, no pet.) .............. 48, 50, 52, 61, 62

*Encompass Office Solutions, Inc. v. Ingenix, Inc.*,
  775 F.Supp. 938 (E.D.Tex.2011)........................................................ 59, 61

*First Nat. Life Ins. Co. v. Vititow*,
  323 S.W.2d 313 (Tex.Civ.App.--Texarkana 1959, writ dism'd) .................35

*Fitness Evolution, L.P. v. Headhunter Fitness, L.L.C.*,
No. 05-13-00506-CV, 2015 WL 6750047, 2015 Tex.App. LEXIS
(Tex.App.--Dallas Nov. 4, 2015, no pet.)......................................25, 48-53, 61

*Gillespie v. Nat'l Collegiate Student Loan Trust 2005-3*,
No. 02-16-00124-CV, 2017 WL 2806780, 2017 Tex.App.LEXIS 5957
(Tex.App.--Fort Worth, June 29, 2017, no pet.).............................................24

*Great Am. Ins. Co. v. Fed. Ins. Co.*,
No. 3:04-CV-2267-H, 2006 WL 2263312, 2006 U.S.Dist. LEXIS 55038
(N.D.Tex. Aug. 8, 2006)...............................................................................64

*Guinn Invs. v. Ridge Oil Co.*,
73 S.W.3d 523 (Tex.App.--Fort Worth 2002, pet. denied) ...........................40

*Gumpp v. Philadelphia Life Ins. Co.*,
562 S.W.2d 885 (Tex.Civ.App.--San Antonio 1978, no writ) ......................35

*Gusma Props., L.P. v. Travelers Lloyds Ins. Co.*,
514 S.W.3d 319 (Tex.App.--Houston [14th Dist.] 2016, no pet.)................34

*Harris v. American Protection Ins.*,
158 S.W.3d 614 (Tex.App.--Fort Worth 2005, no pet.)...............................34

*Hazlewood v. Werley*,
No. 07-12-00166-CV, 2014 WL 2810215, 2014 Tex.App. LEXIS 6698
(Tex.App.--Amarillo, June 18, 2014, pet. denied) .......................................41

*Hermann Hosp. v. Nat. Standard Ins. Co.*,
776 S.W.2d 249 (Tex.App.--Houston [1st Dist.] 1989, writ denied)......56-58

*Higginbotham v. State Farm Mut. Auto Ins. Co.*,
103 F.3d 456 (5th Cir.1967) .......................................................................35

*Hixson v. Pride of Texas Dist. Co., Inc.*,
683 S.W.2d 173 (Tex.App.--Fort Worth 1985, no writ) ..............................39

*Hydroscience Technologies, Inc. v. Hydroscience, Inc.*,
401 S.W.3d 783 (Tex.App.--Dallas 2013, pet. denied)................................20

*Jarvis v. Rocanville Corp.*,
298 S.W.3d 305 (Tex. App.—Dallas 2009, pet. denied) ..............................39

*John C. Flood of DC, Inc. v. SuperMedia, LLC*,
408 S.W.3d 645 (Tex.App.--Dallas 2013, pet. denied)...........................51, 53

*Key Life Ins. Co. v. Davis*,
519 S.W.2d 403 (Tex.Civ.App.--Beaumont 1974, no writ).........................35

*King-Mays v. Nationwide Mut. Ins. Co.*,
194 S.W.3d 143 (Tex.App.--Dallas 2006, pet. denied)................................51

*KLZ Diamond Tools, Inc. v. TKG Gen. Agency, Inc.*,
2016 Tex.App.LEXIS 7639 (Tex.App.--Dallas July 18, 2016, no pet.) .......66

*Lamar Homes, Inc. v. Mid-Continent Cas. Co.*,
242 S.W.3d 1 (Tex.2007) .................................................................................33

*Launius v. Allstate Ins. Co.*,
No. 03-06-CV-0579-B, 2007 WL 113547,
2007 U.S.Dist. 28286 (N.D.Tex. Apr. 17, 2007) ...........................................64

*Lee v. Rogers Agency*,
517 S.W.3d 137 (Tex.App.--Texarkana 2017, no pet.).................................63

*MBM Fin. Corp. v. Woodlands Operating Co.*,
292 S.W.3d 660 (Tex.2009) ................................................................... 39, 40

*Montoya v. State Farm Mut. Auto Ins. Co.*,
No. 16-00005 (RCL), 2016 WL 5942327, 2016 U.S.Dist. LEXIS 141
(W.D.Tex. Oct. 12, 2016).................................................................................64

*Nootsie Ltd. v. Williamson Cty. Appraisal Dist.*,
925 S.W.2d 659 (Tex.1996) ............................................................................53

*PPG Industries, Inc. v. JMB/Houston Centers Partners, Ltd.*,
146 S.W.3d 79 (Tex.2004) ......................................................... 26, 62-64

*Ramin' Corp. v. Wills*,
No. 09-14-00168-CV, 2015 WL 612602, 2015 Tex.App. LEXIS 10612
(Tex.App.--Beaumont Oct. 15, 2015, no pet.)................................................41

*Republic Nat. Life Ins. Co. v. Spillars*,
363 S.W.2d 373, 376 (Tex.Civ.App.--Waco 1962) ......................................59

*Ressler v. Gen. Am. Life Ins. Co.*,
561 F.Supp.2d 691 (E.D.Tex. 2007) ....................................................... 29-31

*Royal Globe Ins. Co. v. Bar Consultants, Inc.*,
566 S.W.2d 724 (Tex.Civ.App.--Austin 1978) ....................................... 56-58

*Samedan Oil Corp. v. Intrastate Gas Gathering, Inc.*,
78 S.W.3d 428 (Tex.App.--Tyler 2001, pet. granted,
judgm't vacated w.r.m.)...................................................................................47

*Scottsdale Ins. Co. v. Travis*,
68 S.W.3d 72 (Tex.App.--Dallas 2001, pet. denied)...................................40

*Star-Telegram, Inc. v. Doe*,
915 S.W.2d 471 (Tex.1995) .........................................................................39

*State and County Mut. Fire Ins. Co. v. Walker*,
228 S.W.3d 404 (Tex.App.--Fort Worth 2007, no pet.)...............................45

*State Farm Life Ins. Co. v. Martinez*,
216 S.W.3d 799 (Tex.2007) .........................................................................33

*Sullivan, In re*,
157 S.W.3d 911 (Tex.App.--Houston [14th Dist.] 2005, no pet.).................54

*Tango Transport v. Healthcare Financial Services, LLC*,
322 F.3d 888 (5th Cir.2003) .........................................................................60

*Texas Farmers Ins. Co. v. Gerdes*,
880 S.W.2d 215 (Tex.App.--Fort Worth 1994, writ denied)........................50

*Town Ctr. Mall v. Dyer*,
No. 02-14-00268-CV, 2015 Tex.App. LEXIS 10213
(Tex.App.--Fort Worth Oct. 1, 2015, pet. denied) .......................................53

*U.S. Bank, N.A. v. Prestige Ford Garland, Ltd. Partnership*,
170 S.W.3d 272 (Tex.App.--Dallas 2005, no pet.) ......................................42

*Umar v. Scott*,
991 S.W.2d 512 (Tex.App.--Fort Worth 1999, no pet.)...............................39

*United States v. United Servs. Auto Ass'n*,
431 F.2d 735 (5th Cir.1970), *cert. denied*, 400 U.S. 992 (1971) .................59

*Universe Life Ins. Co. v. Giles*,
  950 S.W.2d 48 (Tex.1997) ............................................................ 28, 33

*Vail v. Texas Farm Bureau Mut. Ins. Co.*,
  754 S.W.2d 129 (Tex.1988) ..................................................................57

*Vandeveter v. All American Life & Cas. Co.*,
  101 S.W.3d 763 (Tex.App[.--Fort Worth 2003, no pet.) ...........................29

*Vertical N. Am., Inc. v. Vopak Terminal Deer Park, Inc.*,
  No. 14-15-01088-CV, 2017 Tex.App. LEXIS 8944
  (Tex.App.--Houston [14th Dist.] Sept. 21, 2017, no pet.).........................51

*Walker v. Federal Kemper Life Ins. Co.*,
  828 S.W.2d 442 (Tex.App.--San Antonio, Jan. 29, 1992, writ denied)........41

*Watts v. Oliver*,
  396 S.W.3d 124 (Tex.App.--Houston [14th Dist.] 2013, no pet.)................47

*Webb v. Int'l Trucking Co.*,
  909 S.W.2d 220 (Tex.App.--San Antonio 1995, no writ)...........................58


Statutes
29 U.S.C. §1132(a)(1)    ................................................................................60

TEX.CIV.PRAC. & REM. CODE §37.009 ...................................................................40

TEX.INS. CODE
  §541.001          ........................................................................................58
  §541.008          ........................................................................................58
  §541.002(2)       ........................................................................................55
  §541.051(1)(A)    ........................................................................................36
  §541.052(a)       ........................................................................................36
  §541.052(b)(5)    ........................................................................................36
  §541.060(a)(1)    ........................................................................................36
  §541.060(a)(2)(A) ........................................................................................28
  §541.061(1)       ........................................................................................36
  §541.152(a)       ........................................................................................36
  §541.152(a)(1)    ........................................................................................45
  §541.152(b)       ..................................................................................... 36, 45
  §542.003(b)(1)    ........................................................................................65
  §542.005          ........................................................................................65

§542.006 .......................................................................................................65

§542.010 .......................................................................................................65

§542.012 .......................................................................................................65

§542.051(2) .................................................................................................60

§542.054 .......................................................................................................33

§542.055(a)(2) & (3) ...................................................................................34

§542.058(a) .................................................................................................34

§542.060 .............................................................................................. 34, 59

§1103.151 ............................................................................................ 41, 42

§3.62 (repealed) .........................................................................................59

art. 21.21 §16(a) (repealed) .................................................................. 55, 56

Acts 1951, 52nd Leg., ch. 491, amended by Acts 1957, 55th Leg., p.401, ch. 198 56

Acts 1969, 61st Leg., p.2051, ch. 706, §1 eff. June 12, 1989 .................................56

Acts 1973, 63rd Leg., p.335, ch. 143, §§2(a)-2(c), eff. May 21, 1973 ....................56

Acts 1973, 63rd Leg., R.S., ch. 319 §1, 1973 TEX.GEN.LAWS 735 ........................36

Acts 2003, 78th Leg., ch.1274 §2 (eff. April 11, 2005) .........................................55

Rules

TEX.R.APP.P.

Rule 33.1 .......................................................................................51

Rule 33.1(a)(1)(A) .........................................................................47

Rule 33.1(b) ...................................................................................47

TEX.R.CIV.P.

Rule 93(2) ......................................................................................51

Rule 329b(g) ..................................................................................47

STATEMENT OF THE CASE

This case arises from an eight month delay in paying life insurance proceeds. The policy was issued by Old American Life Insurance Co., the Appellant. When the insured died, the beneficiary assigned his claim for $4,725 in policy proceeds to the funeral home, which, in turn, assigned it to Lincoln Factoring, LLC, the Appellee.

In October of 2014, Lincoln requested payment, but Old American refused to pay until it had a "completed" death certificate showing cause-of-death. However, under the policy, payment did not depend on cause-of-death. Five months later, in March of 2015, Lincoln sued Old American in Justice Court.

Three months after that, in June of 2015, Old American said that it had received a "completed death certificate" showing cause-of-death, and it paid the $4,725 to Lincoln. Thus, Old American delayed payment for eight months.

Lincoln continued its suit. The Justice Court ruled for Old American, and Lincoln took a de novo appeal. In the County Court at Law, Lincoln asserted Insurance Code claims for failure to make "prompt payment," for "bad faith," and for misrepresentation. Old American counterclaimed for declaratory judgment. The court rendered summary judgment for Lincoln awarding multiple damages, interest and attorney's fees. Old American has appealed.

The "death benefit" and
the suicide exclusion

On August 13, 2011, Rebecca Barnes of Washington, D.C. applied for a life insurance policy with Old American Ins. Co., of Kansas City.[1] Old American issued a policy two days later.[2] It was a "whole life policy" in the "Initial Face Amount" of $10,000. *See* Policy, p.3 § 4.4, p.7 §4.6 (250, 254).[3] The "death benefit" was defined as the "face amount" of $10,000. *Id.*

According to the policy, this initial $10,000 "death benefit" was payable "when we receive proof of the Insured's covered death." *Id.*, p.7 §5 (emphasis added). There was one cause-of-death exclusion: suicide was "excluded from coverage for two years after the effective date." *Id.*, p.8 §8.3 (255).

The ADB and the
additional exclusions

The policy also provided for an "Accidental Death Benefit" (or "ADB") for an additional $10,000. *See* Benefit and Premium Schedule (251). This ADB was payable "upon receiving proof that an insured's death . . . resulted directly and independently of all other causes from accidental bodily

---

[1] See interview sheet (266).

[2] *See* Ropp aff., p.1 (607); cover letter (242).

[3] This citation is to the Clerk's Record.

injury." (257) (emphasis added). There was also a list of "Risks Not Covered," which excluded death from war, suicide, infection, disease, committing a felony, drugs, flying, etc. (257). But these cause-of-death provisions applied only to the $10,000 ADB. *Id.* They did not apply to the initial $10,000 "death benefit." *Id.*

The death and the assignment

Rebecca Barnes, the insured, died in Washington, D.C. on September 28, 2014, three years after the policy was issued. The death certificate stated that cause-of-death was "pending" (272). However, the funeral director signed an affidavit stating that the "cause of death was natural or accidental" (466) (emphasis added).

The beneficiary of the policy was named Frank Howard (323). As fiancé of the deceased, he purchased the funeral for $4,725 (465). He paid for the funeral by assigning $4,725 in policy proceeds to the funeral home, which in turn assigned them to Lincoln Factoring, LLC, of Fort Worth, the Appellee (269-270). Howard also assigned an additional $1,884.75 in policy proceeds to the cemetery, which assigned them to American Capital Funding (352-353).

Lincoln makes a claim

On October 21, 2014 Lincoln Factoring delivered the assignments, a claim form, the death certificate, a published announcement of death, the funeral bill, and the funeral director's affidavit to Old American and requested payment of

the $4,725. The death certificate was issued by the Department of Health of the District of Columbia. It showed that Rebecca Barnes had died on September 28, 2014, and showed cause-of-death as "pending." (463). American Capital Funding also made a claim (636-638).

## The three claims

At this point, there were three claims to the initial $10,000 "death benefit." *See* Ropp. aff., p.2 (324).[4] Lincoln was claiming $4,725 and American Funding was claiming $1,884.75. *Id.* (324, 352-353). These two claims totaled $6,609.75. The third claimant was Frank Howard, the beneficiary, who was owed the balance of the "death benefit" ($10,000.00 - $6,609.75 = $3,390.25). Also, Howard had a claim to the entire $10,000 ADB (257).

Again, as to the initial $10,000 "death benefit," there was only one cause-of-death exclusion--suicide (255). But that exclusion had expired a year before the death. The policy was issued on August 13, 2011; the suicide exclusion expired two years later, on August 13, 2013; and Rebecca Barnes died a year after that, on September 28, 2014. Accordingly, the initial $10,000 death benefit was payable <u>immediately</u>, and Old American was required to distribute it as follows:

---

[4] *See also* Defendant's Resp. to Plaintiff's Motion for Summary Judgment, p.2 ¶ 2 (595).

(i) $4,475 to Lincoln (ii) $1,884.75 to American Capital Funding and (iii) $3,390.25 to Frank Howard, the beneficiary.

Matters were different as to the $10,000 ADB, which was owed solely to Frank Howard, the beneficiary.   Unlike the initial $10,000 "death benefit," payment of the ADB <u>was</u> subject to cause-of-death exclusions. *See supra*, p.14. Therefore, under the policy, Old American had a right to delay payment of the ADB until it received evidence of cause-of-death.   But Old American had <u>no right</u> to delay payment of the initial $10,000 "death benefit."   Even so, as we shall see, Old American withheld <u>both</u> payments--the $10,000 "death benefit" and the $10,000 ADB--until it finally received a "completed" death certificate showing cause-of-death.

Old American delays payment

On October 23, 2014, Old American advised Lincoln that "we still need a copy of the death certificate" (360).   Specifically, it wanted "a complete death certificate with cause and manner of death included." Ropp aff., p.2 (608). On December 18, 2014, Lincoln's attorney wrote to Old American.   He explained that "[p]roof of the cause of death is not required to pay on the above policy." (362) (emphasis added).   Old American ignored this obvious fact.   Instead, on December 30, 2014, it replied as follows:

> Thank you for providing the death certificate for this claim. However, because the cause of death is listed as being "under

17

investigation," we cannot conclude our claim investigation at this time. The policy has an Accidental Death Benefit rider and the cause of death is required information to determine if the ADB claim is payable. <u>Further, the underlying claim may be affected if the cause of death is homicide or suicide.</u>

Letter (648) (emphasis added).

The underlined language was simply wrong. The suicide exclusion had expired, and while homicide was an excluded cause-of-death <u>for the ADB</u>, that exclusion was <u>not</u> applicable to the initial $10,000 "death benefit."

Lincoln sues and
Old American pays

On March 16, 2015, five months after demand, Lincoln sued Old American in Justice Court (6). On June 19, 2015, eight months after demand, Old American emailed Lincoln that "We have the death certificate!" (374). The email continued: "By the way--cause of death Hypertensive Cardiovascular Disease" (374). On June 22, Old American delivered its check for $4,725 to Lincoln (375). Old American also paid American Corporate Funding and Frank Howard.[5]

The litigation

The Justice Court heard the case on September 29, 2015, and it rendered judgment that Lincoln take nothing (96). Lincoln appealed to the County Court at Law (97). It alleged Insurance Code claims for failure to make "prompt

---

[5] *See* Old American's summary judgment response, p.4 (597).

payment," for "bad faith," and for misrepresentation (125-135, 137-140).[6]  Old

American counterclaimed for declaratory judgment and attorney's fees (101).

## The judgment

The parties filed cross-motions for summary judgment and responses

(179, 311, 377, 594).[7]  The County Court at Law granted Lincoln's motion, denied

Old American's motion, and awarded $9,450 in "treble damages," $1,050 in

interest, and $12,000 in attorney's fees.  *See* Order (663).  It also ordered "that

judgment be entered in favor of Lincoln Factoring, LLC for all its claims, and that

Defendant Old American Insurance Company take nothing by its claims." *Id.*  The

Order did not state the grounds upon which it was based. *Id.*

## SUMMARY OF THE ARGUMENT

Old American's issues fall into two groups:  "standing" and "merits."

"Standing" involves jurisdiction, and courts should decide jurisdictional issues

first.[8]  But Lincoln's arguments involve "capacity," rather than "standing."  And in

---

[6] Lincoln alleged both common law and statutory bad faith.  *See* Plaintiff's Second
Amended Petition, pp.6-7 ¶ 33 (126-127) & p.10-11 ¶ 38 (130-131).   It also alleged DTPA
violations. *Id.*, p.16 ¶¶ 45-46 (136).

[7] Lincoln sought summary judgment because Old American "violated the insurance code,
breached the contract, and acted in bad faith" (180).   It did not seek summary judgment under
the DTPA (185-210).

[8] *See, e.g., Hydroscience Technologies, Inc. v. Hydroscience, Inc.*, 401 S.W.3d 783, 789
(Tex.App.--Dallas 2013, pet. denied) ("Standing must be resolved before the merits of an issue
may be addressed.") (*citing DamilerChrysler Corp. v. Enron*, 252 S.W.2d 299, 304 (Tex.2008)).

19

any event, Lincoln has standing directly under the Insurance Code. Both issue are complicated. So, before venturing into the weeds, we want to show the Court where we are going. Accordingly, we will argue "merits" first.

Merits

**Coverage.** As noted above, eight months elapsed from October 2014, when Old American received proof that Rebecca Barnes had died, until June of 2015, when it paid Lincoln. During this entire period, Old American refused to pay until it received proof of <u>cause-of-death</u>. But the initial $10,000 "death benefit" was payable <u>regardless of cause-of-death</u>. All that was needed was proof that Rebecca Barnes had died, and Old American received that when Lincoln first submitted its claim. There was only one cause-of-death exclusion, to-wit: suicide. But it had expired. *See* Argument, part 1, *infra*, p.25.

**Insurance Code.** An insurance policy is a contract, and once Old American finally paid the $10,000 "death benefit," Lincoln could not recover for breach of contract. This is a perennial problem for insurance beneficiaries. The insurer delays payment and then avoids liability for breach of contract by paying at the last minute, just as in this case.

Fortunately, the Texas Insurance Code provides extra-contractual remedies for <u>delay</u> in paying a claim. Specifically, a claimant can recover (i) 18% interest and attorney's fees under the "prompt payment" provisions of the Code

20

and (ii) damages and attorney's fees under the "bad faith" provisions of the Code. Also, under the Code, a claimant can recover damages and attorney's fees for the insurer's misrepresentations. In this case, Lincoln can recover on all three claims.

**Bad faith.** The test for "bad faith" is whether the insurer's liability under the policy has become "reasonably clear." In our case, Old American's liability was absolutely clear. The suicide exclusion had expired, and the initial $10,000 "death benefit" was payable as soon as Old American received the claim. Old American's stated reason for delaying payment--that it needed evidence of cause-of-death--was transparently false. Indeed, Old American has never said why the initial $10,000 "death benefit" was not payable immediately. Accordingly, Old American is liable under the "bad faith" provisions of the code (and the common law). *See* Argument, part 2, *infra*, p.27.

**Treble damages.** It was Old American's policy to delay payment until it received a "completed" death certificate, even when payment did not depend on cause-of-death. Lincoln's attorney told Old American why payment was due at once, but Old American ignored this explanation. Thus, it is undisputed that Old American "knowingly" refused to pay, and is liable for treble damages. *See* Argument, part 8, *infra*, p.44.

**Prompt payment.** Under the "prompt payment" provisions of the Code, Old American had 60 days to pay the claim, and when it missed that

21

deadline, it became liable for 18% interest and attorney's fees.   Old American says

that there was a "good faith" disagreement over the interpretation of the policy.

But Old American has never offered any interpretation that would let it delay

payment, and in any event, "good faith" is not a defense to a "prompt payment"

claim.   Once it was established that the death was covered, Old American

automatically became liable for 18% interest and attorney's fees. *See* Argument,

part 3, *infra*, p.32.

**Misrepresentation.**   There was evidence that, before accepting the

assignment, Lincoln asked for and received assurances from Old American that it

would pay the claim.   But Old American did not address Lincoln's

misrepresentation claim in its summary judgment response, and it has not

addressed them in this Court.   Accordingly, Old American has waived any error as

to the misrepresentation claims, and the judgment must be affirmed without regard

to the merits. *See* Argument, part 4, *infra*, p.34.

**Declaratory Judgment.**   Old American filed a counterclaim for

declaratory judgment.   Under the Declaratory Judgments Act, attorney's fees can

be awarded to <u>either party</u>, regardless of who prevails.   Here again, Old American

has not assigned error and the attorney's fees award must be affirmed without

reaching the merits. *See* Argument, part 5, *infra*, p.38.

**Forfeiture:** In this Court, for the first time, Old American is invoking an Insurance Code provision allowing forfeiture of life insurance benefits if the beneficiary intentionally caused the death of the insured. But Old American did not raise this issue in the trial court, and it has been waived. *See* Argument, part 6, *infra*, p.40.

**Preservation:** Finally, Old American complains about the calculation of interest and damages and the trebling of damages. But these issues were not raised in the trial court, and any error has been waived. *See* Argument, part 9, *infra*, p.45.

### "Capacity" and "standing"

Old American is challenging Lincoln's "standing" to seek relief under the Insurance Code. *See* Appellant's Brief, p.13 (Issues 1-3) & pp.24-32 (Argument, parts 1-5). Of course, "standing is a component of subject matter jurisdiction that may be raised for the first time on appeal." [9] But Old American's arguments do not involve "standing." They involve "capacity."

Old American's argument is based on Frank Howard's assignment to the funeral home. First, it says that, while Howard assigned his right to policy proceeds, he did not also assign his Insurance Code claims. *See* Appellant's brief,

---

[9] *Gillespie v. Nat'l Collegiate Student Loan Trust 2005-3*, No. 02-16-00124-CV, 2017 WL 2806780, 2017 Tex.App.LEXIS 5957, at *3 n.12 (Tex.App.--Fort Worth, June 29, 2017, no pet.).

pp.26-27.  Second, Old American says that, for public policy reasons, Howard could not have assigned his Insurance Code claims. *Id.*, pp.27-32.   We have three alternative responses.

### a.  Old American's complaints involve capacity, not standing.

Lack of capacity is waived if it is not raised in the trial court.[10]   And the Fifth Court has expressly held that (i) whether a claim has been assigned is a question of capacity and (ii) whether a claim is assignable also involves a question of capacity. *See Fitness Evolution, L.P. v. Headhunter Fitness, L.L.C.*, No. 05-13-00506-CV, 2015 WL 6750047, 2015 Tex.App. LEXIS at *42-44 (Tex.App.--Dallas Nov. 4, 2015, no pet.).   Because Old American did not raise either of these issues in the trial court, they have been waived.  *See* Argument, part 10, *infra*, p.47.

### b.  The claims were assigned, and they were assignable.

Absent contrary language, an assignment of policy benefits carries with it an assignment of the Insurance Code claims.   Accordingly, when Howard assigned his policy benefits, he also assigned his Insurance Code claims.

As to assignability, all claims are assignable except for a few kinds of claims which are non-assignable for public policy reasons.   Old American's claims do not fall within that narrow group of exceptions.   Old American relies on

---

[10] *Coastal Liquids Transp., L.P. v. Harris County Appraisal Dist.*, 46 S.W.3d 880, 884 (Tex.2001) (challenges to lack of capacity can be waived).

*PPG Industries, Inc. v. JMB/Houston Centers Partners, Ltd.*, 146 S.W.3d 79

(Tex.2004), which prohibits assignment of DTPA claims to discourage "wealthy

entrepreneurs" from trading in high dollar DTPA claims. These concerns are not

applicable here. Lincoln (and other factoring companies) provide up-front money

so that bereaved persons can afford funerals for their loved ones. In return,

Lincoln receives assignments of policy benefits. Because this business meets an

important public need, acquisition of Insurance Code claims should be facilitated,

not discouraged. *See* Argument, part 13, *infra*, p.60.

      **c.**     **Direct standing under the Insurance Code.** In any event,

Lincoln has standing, in its own right, to assert its claims directly under the

Insurance Code. Under section 541.151 of the Code, "bad faith" and

misrepresentation claims may be brought by "[a] person who sustains actual

damages." And under Section 542.060 "prompt payment" claims may be brought

by the assignee of policy benefits. *See* Argument, parts 11 & 12, *infra*, pp.52-58.

ARGUMENT<br>PART ONE: MERITS

**1.**     **Old American was required to pay the $10,000 "death benefit" when it received proof that the insured had died, regardless of cause-of-death.**

      As we have seen, Old American said (i) that it could not determine

whether Lincoln's claim was payable without determining cause-of-death and (ii)

that it could not determine cause-of-death until it received the "completed death

25

certificate." *See supra*, p.17.[11]   But again, the policy had two parts:  the initial

$10,000 "death benefit" and the $10,000 ADB.   We are only concerned with the

initial $10,000 "death benefit," and under the policy, that was payable "when we

receive <u>proof of</u> the Insured's <u>covered death</u>." Policy, p.7 ¶ 5 (254) (emphasis

added).

Payment of the initial $10,000 "death benefit," was subject to <u>only</u>

<u>one</u> cause-of-death exclusion.   Suicide was "excluded from coverage for two years

after the effective date." *See supra*, p.14.   But this exclusion had expired.[12]  From

that point on, death from <u>any cause</u> was a "covered death."

Accordingly, in order to receive payment, Lincoln merely had to

present proof that the insured was, in fact, dead.  And the death certificate

undeniably showed that the insured was dead (even though it did not show cause-

of-death).   Still, Old American refused to pay until it received a "completed" death

certificate showing cause-of-death, <u>even though payment of the initial $10,000</u>

<u>"death benefit" did not depend on cause-of-death</u>. *See supra*, p.16.   Using this

transparently false excuse, Old American delayed payment for eight months.

---

[11] *See* Response to Request for Admission, p.3 ¶ 4 (admitting that the claim would be
paid once Old American received a death certificate showing the <u>cause and manner of death</u>).
(295).

[12] *Id.*, pp.2-3 ¶ 6 (295-296) & p.5 ¶ 17 (297) (admitting the insurance policy had been in
force for over two years and that, if the cause of death had been suicide, the life insurance benefit
would have had to be paid).

26

Lincoln's claim was only for $4,725, and it could be satisfied from the $10,000 "death benefit." Again, Frank Howard, the beneficiary, was initially entitled to receive the entire $10,000, but he assigned $4,725 to the funeral home and $1,884.75 to the cemetery. Both claims could have been satisfied from the initial $10,000 "death benefit" leaving the balance ($3,390.25) for Frank Howard. *See supra*, p.16.

## 2. Bad faith: Old American's obligation to pay the $10,000 death benefit was "reasonably clear" when Lincoln first made its claim.

At common law, an insurer "violates its duty of good faith and fair dealing by denying <u>or delaying</u> payment of a claim if the insurer <u>knew or should have known it was reasonably clear that the claim was covered</u>." *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 49 (Tex.1997) (emphasis added). Similarly, under the Insurance Code, it is an unfair practice to fail "to attempt in good faith to effectuate a prompt, fair, and equitable settlement of . . . a claim with respect to which the insurer's liability has become <u>reasonably clear</u>." TEX.INS.CODE §541.060(a)(2)(A) (emphasis added).[13]

Old American correctly says that "the standard for statutory and common law bad faith is the same." Appellant's brief, p.39.[14] In both kinds of

---

[13] *See generally Giles*, 950 S.W.2d at 55-56 (Tex.1997) (statutory history).

[14] *Id.* at 55-56 (adopting common-law standard for statutory bad faith actions).

27

cases "an <u>objective standard</u> is utilized to determine whether a reasonable insurer under similar circumstances would have delayed or denied payment of the claim." *Id.*, p.40 (emphasis added).[15]   And because the standard is "objective" it can be decided on summary judgment.

Again, it is undisputed that Old American was obligated to pay the initial $10,000 "death benefit" when it received proof that the insured had died regardless of cause-of-death.   This occurred on October 1, 2014, when Lincoln delivered the death certificate, the published announcement of death, the funeral bill and the funeral director's affidavit.  *See supra*, p.16.   At that point, Old American's "liability ha[d] become reasonably clear," and its decision to delay payment of the $10,000 "death benefit" for eight months is "bad faith" both at common law and under the Insurance Code.

In *Ressler v. Gen. Am. Life Ins. Co.,* 561 F.Supp.2d 691 (E.D.Tex. 2007), the insured initially purchased a $60,000 life insurance policy.   Later the coverage was increased to $100,000.   Under the policy, the insurer could contest <u>the increased coverage amount</u> ($40,000) if the application contained a

---

[15] *citing Amanda v. Ins. Co. of North Am.*, 748 S.W.2d 210, 213 (Tex.1998); *Vandeveter v. All American Life & Cas. Co.*, 101 S.W.3d 763, 722 (Tex.App[.--Fort Worth 2003, no pet.). *See also* Appellant's brief, p.38 ("Old American must be judged by an objective standard to determine whether a reasonable insurer under similar circumstances would have delayed payment of the claim.") (*citing Aleman v. Zenith Ins. Co.*, 343 S.W.3d 817, 822 (Tex.App.--El Paso 2011, no pet.)).

misrepresentation regarding the health of the insured. That provision would expire after two years, and it did not apply to the original coverage ($60,000). *Id.* at 693. The insured died a year after the coverage increase, that is, within the two-year contestability period. *Id.*

The insurance company paid the $60,000, but it delayed paying the additional $40,000 because the death certificate showed that the insured had suffered from "severe atherosclerotic disease," a condition not shown on the application for the $40,000 increase in coverage. *Id.* The insurer asked the widow (who was also the beneficiary) to authorize release of medical information. She refused and sued for bad faith. *Id.* After the insurer obtained medical records via discovery, it determined that the insured had made no material misrepresent-ation, and it paid the remaining $40,000. *Id.* Citing a number of Texas cases, the court held that, as to the additional $40,000 coverage, liability had <u>not</u> been reasonably clear, and for this reason, the insurer had <u>not</u> breached its duty of good faith and fair dealing. *Id.* at 696.

If Lincoln had acted in good faith--like the insurer in *Ressler*--it would have paid the initial $10,000 "death benefit" (including the $4,725 to Lincoln) and delayed paying the additional $10,000 ADB until it received proof of cause-of-death. But in our case, Old American delayed payment of <u>both</u> the ADB <u>and</u> the "death benefit" until it received the "completed" death certificate showing

cause-of-death. This would be the same as if the insurer in *Ressler* had delayed payment of <u>both</u> the $40,000 coverage increase <u>and</u> the $60,000 initial coverage until questions regarding the alleged misrepresentation in the application were resolved. Under those circumstances, that insurer would have been liable for "bad faith" in delaying payment of the initial $60,000. Similarly, in our case, Old American is liable for "bad faith" in delaying payment of the initial $10,000.

Old American cites the Ropp affidavit as evidence that its "claim procedure . . . was consistent with the standards in the insurance industry." Appellant's brief, pp.37-38 (*citing* Ropp affidavit). But Ropp did not say that. Rather, he said that:

> <u>It is the standard in the insurance industry to require certain information and documentation regarding an insured's death before paying a claim.</u> Where the Policy does not mention claim forms, they are required in every claim. <u>Additionally, a completed death certificate, while not specifically mentioned in the Policy is also required for all claims by Old American.</u>

Ropp aff., p.3 (325). Thus, Ropp merely said that it is "standard in the insurance industry" to require "certain information and documentation." And in this case, the only "information and documentation" needed to pay the initial $10,000 "death benefit" was proof that the insured had died. It is undisputed that Old American had this in October of 2014 when Lincoln first submitted its claim.

Ropp also said that it was <u>Old American's</u> policy to require "a completed death certificate . . . for all claims." (emphasis added). While this

might have been <u>Old American's</u> internal requirement, there is no evidence that it is "the standard in the insurance industry" to require proof of cause-of-death when payment does not depend on cause-of-death. On the contrary, this statement shows that Old American acted "knowingly" thereby making it liable for treble damages. *See infra*, p.44.

Old American also says that, "[w]hen the death certificate raises questions which require further investigation, the insurer is entitled to delay payment of the claim until a reasonable investigation is concluded." Appellant's brief, p.38. But, in this case, the death certificate did not raise questions "which require further investigation." It showed that Rebecca Barnes had died, and that was all that was needed to pay the initial $10,000 "death benefit."

Further evidence of Old American's "bad faith" is found in its December 18, 2014 letter. We have already quoted the first paragraph of this letter on page 17 and 18 above. That letter continued as follows:

> Please provide a death certificate with the cause of death determined (<u>or other documentation demonstrating the cause of death</u>) as soon as that investigation is concluded. Once we have that information, we can complete our claim investigation.

Letter (648) (emphasis added). Also, Ropp swore that

> Lincoln Factoring never provided, or attempted to provide, "other documentation demonstrating the cause of death." <u>There was no affidavit from a loved one stating the manner of death</u>, no medical records, nothing ever indicating the manner or cause of death."

31

Ropp aff., p.2 (608) (emphasis added).

This is yet another transparent falsehood. It is undisputed that, from the outset, Old American had the funeral director's affidavit, which stated that the "cause of death was natural or accidental." *See supra*, p.15.

**3.    Prompt payment:   Lincoln was entitled to recover 18% interest and attorney's fees.** *See* Appellant's brief, pp.35-36.

Because Old American finally paid the claim, it says that it is not liable for breach of contract.   Even so, under the "prompt payment" provisions of the Insurance Code, it was still liable for 18% interest and attorney's fees.

**The statute.**   Prompt payment statutes have been around since Reconstruction.[16]   The current version, applicable here, is found in Chapter 542, Subchapter B, of the Insurance Code, entitled "Prompt Payment of Claims." Specifically, we are concerned with sections 542.055, 542.058 and 542.060. These provisions must be liberally construed to promote "the prompt payment of insurance claims." *Id.* §542.054.

Under section 542.055, the insurer has 30 days after "receiv[ing] notice of a claim" to "commence an investigation of the claim; and request from the claimant all items, statements, and forms that insurer reasonably believes, at

---

[16] *See generally State Farm Life Ins. Co. v. Martinez*, 216 S.W.3d 799, 803-804 & nn.14-20 (Tex.2007); *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 24-25 & nn.1-7 (Tex.2007) (Brister, J., dissenting); *Universe Life Ins. v. Giles*, 950 S.W.2d 48, 55-56 (Tex.1997).

that time, will be required." TEX.INS.CODE §542.055(a)(2) & (3). Then, once the insurer "receiv[es] all items, statements, and forms reasonably required," it has 60 days to pay the claim. *Id*. §542.058(a). If it fails to pay within 60 days, it "shall pay damages and other items provided n Section 542.060." *Id.* §542.058(a). And under 542.060, an insurer who fails to comply "is liable to pay . . . interest on the amount of the claim at the rate of 18 percent per annum as damages together with reasonable attorney's fees." *Id*. §542.060.[17]

**No "good faith" defense.** Old American says that the parties "merely had a good faith disagreement over the wording of the policy and the importance of having a complete death certificate." Appellant's brief, p.37. It's difficult to take this assertion seriously since Old American has never offered a reason as to why it needed a "complete death certificate." But even if there had been a "good faith disagreement," Old American would still be liable because "good faith" is not a defense to a claim under the "prompt payment" provision.

"An insurance company's good faith assertion of defense does not relieve the insurer of liability for penalties for tardy payment, as long as the insurer is finally adjudged liable." *Higginbotham v. State Farm Mut. Auto Ins. Co.*, 103

---

[17] *See generally Gusma Props., L.P. v. Travelers Lloyds Ins. Co.*, 514 S.W.3d 319, 322-323 (Tex.App.--Houston [14th Dist.] 2016, no pet.) (summarizing operation of statute); *Harris v. American Protection Ins.*, 158 S.W.3d 614, 623 (Tex.App.--Fort Worth 2005, no pet.) (same). *Cf.* Appellant's brief, p.35 (last paragraph).

F.3d 456, 461 (5th Cir.1967).[18]  *Accord Cater v. United Servs. Auto. Ass'n*, 27 S.W.3d 81, 84 (Tex.App.--San Antonio 2000, pet. denied) ("an insurance company's good faith defense do[es] not relieve the insurer from liability for damages for late payment, as long as the insurer is finally found liable for the claim.").[19]  Thus, even if Old American had had a "reasonable basis" for withholding payment, it would still be liable for interest and attorney's fees under the "prompt payment" provisions.

**Application.**  Old American withheld payment for eight months, but ultimately admitted that the $4,725 claim was owed.  Therefore, under the "prompt payment" provisions, Old American is liable for 18% interest on the amount of the claim for those eight months, plus attorney's fees.

**4.    Old American has waived any error as to the misrepresentation claims.**

---

[18] *citing Key Life Ins. Co. v. Davis*, 519 S.W.2d 403, 405 (Tex.Civ.App.--Beaumont 1974, no writ).

[19] *See also Gumpp v. Philadelphia Life Ins. Co.*, 562 S.W.2d 885, 888-889 (Tex.Civ.App. --San Antonio 1978, no writ) ("Where the 30-day demand has been made, the penalty is due if the Insurer is ultimately held liable on the policy no matter how justifiable was the basis for its unsuccessful defense of non-liability); *First Nat. Life Ins. Co. v. Vititow*, 323 S.W.2d 313, 316 (Tex.Civ.App.--Texarkana 1959, writ dism'd) ("[i]f a 30-day demand has been made, the penalty is collectible if the insurer is finally adjudged to be liable on the policy regardless of how justifiable its unsuccessful defense of unaliability may have appeared.  The penalty flows from the failure to pay.") (citations omitted).

**The statute:** Chapter 541, Subchapter B, of the Insurance Code is a codification the Unfair Claims Settlement Practices Act.[20] All together it consists of eleven sections, each defining an unfair or deceptive act or practice. Under four of these--Sections 541.051, 541.052, 541.060 and 541.061--it is an unfair practice to misrepresent the terms or benefits of an insurance policy.[21] The remedial provisions for violation of Chapter 541, Subchapter B--which includes both "bad faith" and misrepresentation--are found in Chapter 541, Subchapter D. A violation of any of these sections entitles a plaintiff to the remedies available under section 541.152, which include actual damages, attorney's fees and costs.[22] And if the violation is "knowingly committed," the damages can be trebled.[23]

**Facts:** As noted above, Lincoln submitted its claim to Old American on October 21, 2014. *See supra*, p.15. Lincoln's cover letter read as follows:

---

[20] *See* Acts 1973, 63rd Leg., R.S., ch. 319 §1, 1973 TEX.GEN.LAWS 735 (codified at TEX.INS.CODE art. 21.21), repealed Acts 2003, 78th Leg., ch. 1274 (H.B. 2922), §26(a)(1) (eff. April 1, 2005).

[21] *See* TEX.INS.CODE §541.051(1)(A)(It is an unfair practice to "make [a] state-ment misrepresenting . . . the terms of the policy."); *Id.* §541.052(a)(It is an unfair practice to make "[a] statement containing an untrue, deceptive, or misleading . . . representations . . . regarding . . . the conduct of the person's insurance business."); *Id.* §541.060(a)(1)(It is an unfair settlement practice to "misrepresent[] to a claimant a material fact or policy provision relating to coverage at issue."); *Id.* §541.061(1)(It is an unfair practice to "misrepresent an insurance policy by . . . making an untrue statement of material fact."). *See also id.* §541.052(b)(5) ("This section applies to [a] statement made . . . in any manner.").

[22] *Id*. §541.152(a).

[23] *Id*. §541.152(b).

Enclosed herewith is our assignment of the above-captioned policy duly executed by Frank Howard, the named beneficiary.  Leah of your company verified the [following] information to us:

1.    That the beneficiary entitled to the policy proceeds is the one named above;

2.    That the policy was in full force and effect and had benefits equal to the amount of this assignment at the time of the insured's demise;

3.    That there were no liens or loans except for against the corpus of the insurance; and

4.    That you would recognize the assignment to us and remit your check in the payment of the proceeds of our assignment to our office at

        6145 WEDGEWOOD DRIVE
        FORT WORTH, TEXAS  76133

Predicated and relying on the above representations, we have for a valuable consideration accepted this assignment.

Letter (459).[24]   This letter, which was not objected to, or even controverted, is evidence of an actionable misrepresentation under the code.

In its First Amended Petition, Lincoln made the following allegation:

Before accepting assignment of the policy proceeds and paying for the decedent's funeral expenses, Plaintiff contacted Defendant to verify the legitimacy of the assignment of Frank Howard.   Defendant through its representatives Leah on October 13, 2014 assured Plaintiff that Frank Howard was entitled to the proceeds of the policy, and Defendant agreed that it would recognize an assignment of $4,725 of the policy proceeds to Plaintiff and remit its check to Plaintiff for that

---

[24] Emphasis added in the opening paragraph.   Emphasis in original in closing paragraph.

> amount. Relying upon the representations and promises of Defendant, Plaintiff paid Payne Funeral Support Services, LLC a check for the funeral services for the decedent.

First Amended Petition, p.2 ¶ 6 (27). Later, Lincoln alleged additional misrepresentations.[25] In the trial court, Lincoln sought summary judgment as to all of these misrepresentation claims.[26] But Old American simply ignored these misrepresentation claims in its summary judgment response. And, as noted above, the trial court granted Lincoln's summary judgment motion as to <u>all</u> claims without distinguishing or identifying any particular claim. *See* Judgment (663).

Now, in this Court, Old American has <u>not</u> assigned error to the misrepresentation claims. Indeed, Sections 541.051, 541.052, 541.060, and 541.061 are not even cited. *See* Appellant's Brief, pp.27-29.

"When, as here, a party moves for summary judgment on multiple grounds and the trial court's summary-judgment order does not specify the ground (or grounds) on which it is based, the appellant must negate all possible grounds on which the order could be based." *Chapparal Operating Co. v. EnergyPro, Inc.,* No. 02-16-00471-CV, 2017 Tex. App. LEXIS 10091, at **2-3 (Tex.App.--Fort Worth,

---

[25] *See* Plaintiff's Second Amended Petition ¶¶ 34, 35, 36, 40 & Ex. A (127-129, 132, 143). *See also* Lincoln's summary judgment response, p.3 (596).

[26] See Lincoln's summary judgment motion, pp. 15-19, 23-24 (193-198, 201-202).

37

Oct. 26, 2017, pet. filed).[27]  Similarly, on appeal, "[w]hen an appellant fails to

challenge every ground on which the summary judgment could have been based,

[the appellate court] must affirm, regardless of the unchallenged ground's merit."

*Id.*[28]  Therefore, this Court must affirm the judgment without reaching the merits of

the misrepresentation theory.

**5.      Old American also waived any error as to the award of attorney's fees under the Declaratory Judgments Act.**

It is common practice for an insurer to sue under the Declaratory

Judgments Act to resolve coverage issues.[29]  And in our case Old American

counterclaimed for declaratory relief as follows:

> Plaintiff knew that Defendant needed to have a completed death certificate and that Defendant cannot require the Tarrant County Medical Examiner's Office (sic) to proceed more quickly in issuing one.  <u>Defendant seeks a declaratory judgment that it was only required to pay Plaintiff the proceeds on this event (sic) and that under Chapter 37 of the Texas Civil Practices and Remedies Code, Plaintiff be required to pay Defendant's legal fees.</u>

---

[27]*citing Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex.1995); *Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 313 (Tex. App.—Dallas 2009, pet. denied).

[28] *Accord Hixson v. Pride of Texas Dist. Co., Inc.*, 683 S.W.2d 173, 176 (Tex.App.--Fort Worth 1985, no writ.) ("Where a judgment may rest upon more than one ground, the party aggrieved must assign error to each such ground, or he has waived his right to complain of the ruling to which no error was assigned.").  *See also Umar v. Scott*, 991 S.W.2d 512, 514 (Tex.App.--Fort Worth 1999, no pet.) (citing cases); *Conley v. Tex. Bd. of Crim. Justice*, No. 03-08-00293-CV, 2010 WL 163292, 2010 Tex.App.LEXIS 3011, at **3-4 (Tex.App.--Austin Apr. 2, 2010, no pet.).

[29] *See generally MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 668 (Tex.2009) (noting that "historically, declarations of non-liability under a contract have been among the most common suits filed under the Act.").

Counterclaim, p.2 ¶ 4 (101) (emphasis added).[30]  Lincoln answered that

counterclaim and pleaded for "reasonable attorneys' fees and costs." (107).

By seeking relief under the Declaratory Judgments Act, Old American

invited being held liable for Lincoln's attorney's fees under that Act, which

provides, in part, as follows:

> In any proceeding under this chapter, the court may award costs and
> reasonable attorney's fees as are equitable and just.

TEX.CIV.PRAC. & REM. CODE §37.009.  Under this broad language, attorney's fees

may be awarded to either party.[31]  Indeed, attorney's fees may even "be awarded

to the <u>non-prevailing party</u>." (emphasis added).[32]

The trial court awarded attorney's fees to Lincoln without stating its

grounds (663), and that award can be upheld under the Declaratory Judgments Act.

Once again, Old American has waived any error as to the award of fees under the

---

[30] *citing* Texas Uniform Declaratory Judgments Act, TEX.CIV.PRAC. & REM. CODE §37.001, *et seq.*

[31] *See MBM Fin. Corp.*, 292 S.W.3d at 669 (The Declaratory Judgments Act "allows fee awards <u>to</u> either party in all cases."); *Apex Fin. Corp. v. Garza*, 155 S.W.3d 230, 238 (Tex.App.--Dallas 2004, pet. denied) ("attorneys' fees may be awarded to either party regardless of who prevails, as long as the award is equitable and just.") (*citing Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 632 (Tex.1996)).

[32] *Accord Countrywide Home Loans, Inc. v. Howard*, 240 S.W.3d 1, 7 (Tex.App.--Austin 2007, pet. denied) ("A court may even award costs and fees to a party who did not prevail.") (*citing Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 637 (Tex.1996)); *Guinn Invs. v. Ridge Oil Co.*, 73 S.W.3d 523, 527 n.1 (Tex.App.--Fort Worth 2002, pet. denied) (same); *Scottsdale Ins. Co. v. Travis*, 68 S.W.3d 72, 77 (Tex.App.--Dallas 2001, pet. denied) ("Under the Act, attorney's fees may be awarded to the non-prevailing party.").

Declaratory judgment Act by failing to make any complaint about that award in the trial court or in this Court.   Indeed, the words "declaratory judgment" do not appear in Old American's summary judgment response (594-606), or the Appellant's brief.

**6.      Old American waived any defense under Section 1103.51 of the Insurance Code.**

In its brief, for the first time, Old American says that "the manner of death would determine whether there was a possibility of forfeiture of the death benefit by the named beneficiary under Texas Insurance Code §1103.151." Appellant's Brief, p.37.   That provision reads as follows:

> A beneficiary of a life insurance policy or contract <u>forfeits the beneficiary's interest</u> in the policy or contract if the beneficiary is a principal or an accomplice in willfully bringing about the death of the insured.

TEX.INS.CODE §1103.151 (emphasis added).   There are three flaws in this argument.

<u>First</u>, section 1103.151, which provides for "forfeiture," is an affirmative defense which must be pleaded,[33] and Old American did not plead this

---

[33] *See Hazlewood v. Werley*, No. 07-12-00166-CV, 2014 WL 2810215, 2014 Tex.App. LEXIS 6698, at *10 (Tex.App.--Amarillo, June 18, 2014, pet. denied) ("Fee Forfeiture as an Affirmative Defense"); *Walker v. Federal Kemper Life Ins. Co*., 828 S.W.2d 442, 449 (Tex.App. --San Antonio, Jan. 29, 1992, writ denied) (treating policy provision providing for forfeiture for non-payment of premiums as an affirmative defense); *Dean Vivian Homes, Inc. v. Sabera's Plumbing and Appliances, Inc.*, 615 S.W.2d 921, 927 (Tex.Civ.App.--Waco 1981, no pet.) (holding that statute providing for forfeiture for charging of usurious interest was an affirmative defense); *Ramin' Corp. v. Wills*, No. 09-14-00168-CV, 2015 WL 612602, 2015 Tex.App. LEXIS 10612, at *23 (Tex.App.--Beaumont Oct. 15, 2015, no pet.) ("A party may seek forfeiture as a

defense (93) [34] or raise it in its summary judgment response (594-606). In an appeal from a summary judgment ruling, a court may consider "only the theories that were presented in writing and considered by the trial court." *U.S. Bank, N.A. v. Prestige Ford Garland, Ltd. Partnership*, 170 S.W.3d 272, 275 (Tex.App.--Dallas 2005, no pet.) (*citing Casso v. Brand*, 776 S.W.2d 551, 553 (Tex.1989)). For that reason, this defense has been waived.

Second, Old American never had any reason to believe that the beneficiary had been a "principal or an accomplice in willfully bringing about the death of [Rebecca Barnes]." [35] Indeed, when it first made a claim, Lincoln provided an affidavit from the funeral director saying that the "primary <u>cause of death was natural or accidental</u>" (466) (emphasis added).

Third, Old American admitted that it never called the District of Columbia police to determine if Frank Howard was under suspicion of causing the death, and it never had any evidence that he was suspected of causing the death.[36] On deposition Richard Ropp, who was in charge of Old American's claims, testified as to "whether or not the beneficiary was under suspicion of causing the

---

remedy for breach of a fiduciary duty, provided the party includes a request for forfeiture in its pleadings.").

[34] Old American did not file an answer in the County Court at Law.

[35] TEX.INS.CODE §1103.151.

[36] Response to Request for Admissions, p.3 ¶¶ 4-5 (302).

death of Rebecca Barnes." Ropp depo. 43/5-15 (412). As to a December 30 email

from Robin Hall, *Id.* 36/22 (412), Ropp testified as follows:

> Q. [By Mr. Engfer] Okay. Can you read it, the part that says what you're referring to?
>
> A. (Reading) In an attempt to try to get this resolved I made some phone calls. I tried to locate a number for the beneficiary with no luck. I called the funeral home. I called the coroner's office and was told that the investigation was still pending. I also called American Capital Funding. They called the cemetery, the cemetery called the coroner's office. The coroner told them to check back in the middle of January. I've seen letters to both the finance companies. At this point it is a waiting game.
>
> Q. Okay. But that doesn't say anything about whether or not the beneficiary is under suspicion of causing the death of Rebecca Barnes, correct?
>
> A. Correct.
>
> Q. So there was, as far as you can tell, no investigation of whether or not the beneficiary is under suspicion of causing the death when you read those--this e-mail, correct?
>
> A. That e-mail may have indicated that we tried.
>
> Q. Well, where in the e-mail does it say that they inquired on whether the beneficiary was under suspicion of Rebecca Barnes' death?
>
> A. It doesn't.
>
> Q. Okay, so as of March 31, 2015 [Old American] had not investigated whether or not the beneficiary is under the suspicion of causing the death of Rebecca Barnes, correct?

A.   Under--further, on the exhibit, on Page 029, the e-mail between counsel Langland and Robin Hall--

Q.   Okay.   Can you read the specific part that says there was an investigation by Old American into whether or not the beneficiary is under suspicion of causing the death of Rebecca Barnes?   Specifically read that.

A.   <u>It doesn't specifically say that</u>.

Q.   It doesn't say that.   It doesn't say that anywhere on this--on 029; isn't that correct?

A.   <u>Correct</u>.

*Id*. 36/22--38/9 (emphasis added) (412-413).

**7.   Lincoln is entitled to recover attorney's fees.**   See Appellant's brief, p.43.

Old American's challenge to the attorney's fees award is quite narrow.   It says that "Lincoln is not a prevailing party in this litigation" and cannot recover its attorney's fees. Appellant's brief, p.43.   But as we have demonstrated, Lincoln was the prevailing party, and it was entitled to recover attorney's fees under the Insurance Code and under the Declaratory Judgments Act.

Aside from arguing that it should be the prevailing party, Old American has made <u>no complaint</u> about the attorney's fees award.   Lincoln supported its claim for attorney's fees with an attorney's affidavit (306).   Old American did not object to that affidavit or present any evidence to create a fact issue.   Old American does not contend that the attorney's fees were not

43

"reasonable and necessary" or that they were not "equitable and just." [37] Nor does it contend that the evidence of attorney's fees was not properly segregated. Indeed, its summary judgment response does not even mention attorney's fees. Thus, the attorney's fees award must be upheld if the court affirms any part of our Insurance Code claim. Indeed, under the Declaratory Judgments Act, it must be affirmed even if the court reverses as to all of our claims, since the trial court can award fees even to the non-prevailing party. *See supra*, p.38.

**8.    Treble damages:   Old American acted "knowingly."**

As previously noted, our statutory bad faith claim is based on Section 541.060 of the Insurance Code.   That provision is entitled "Unfair Settlement Practices," and it is found in Chapter 541, Subchapter B of the Code.   The remedial provisions are found in Chapter 541, Subchapter D.   Under these provisions "[a] plaintiff who prevails in an action under this subchapter may obtain:  .  .  .  actual damages, plus court costs and reasonable and necessary attorney's fees." TEX.INS.CODE §541.152(a)(1).   And if the defendant "knowingly committed the act complained of," a court "may award" up to "three times the amount of actual damages." *Id.* §541.152(b).

---

[37] *See generally State and County Mut. Fire Ins. Co. v. Walker*, 228 S.W.3d 404, 407 (Tex.App.--Fort Worth 2007, no pet.) ("Whether the fees are reasonable and necessary are questions of fact; whether awarding the fees and costs is equitable and just is a question of law.").

As we have seen, the test for "bad faith" is whether the insurer "<u>knew</u> or should have known</u>" that liability was "reasonably clear." *See supra*, n.16. The test for treble damages is whether the insurer "<u>knew</u>." Here it is undisputed that Old American "knew" that the initial $10,000 was payable immediately. Early on, Lincoln's lawyer explained why payment of the claim did not depend on cause-of-death. Even so, Old American expressly refused to pay the claim until it received evidence of cause-of-death. Indeed, as we have seen, it was Old American's <u>policy</u> to require a "completed" death certificate for "all claims," even in cases such as our where payment did not depend on cause-of-death. *See supra*, p.30. Also, in the trial court, Old American did not even complain about the trebling of damages, as we shall now demonstrate.

**9.**  **Old American failed to preserve error as to calculating damages and as to awarding treble damages.** *See* Appellant's brief, pp.41-42, 43-45.

As to the award of actual damages, Old American says that it should receive credit for the $4,725 paid after suit was filed. *See* Appellant's brief, p.41-42. And, as we have seen, it is also complaining about the award of treble damages. *Id.*, p.42. Finally, it says that the trial court erred in calculating interest under the prompt payment provisions. *Id.*, pp.43-45.

Old American did not preserve error as to any of this. Its summary judgment response is completely silent on these issues (594-604). The actions that Old American is <u>now</u> complaining about were set forth in the judgment (663).

45

That was where the trial court awarded "treble damages" in the amount of $9,450.

This appears to result from the following calculations:

$4,725 x 3 = $14,175
$14,175 - $4,725 = $9,450

It was also there, in the judgment, that the trial court awarded the $1,050 in interest that Old American now says was excessive.

To preserve error, Old American should have made these complaints to the trial court. *See* Rule 33.1(a)(1)(A), TEX.R.APP.P. Old American could have done this by moving to modify the judgment under Rule 329b(g), TEX.R.CIV.P.[38] Old American did not do this. Nor did it make any other complaint about these rulings. Accordingly, it has waived any error in the calculation of interest,[39] the award of treble damages,[40] and the calculation of damages.[41]

---

[38] *See* Rule 33.1(b), TEX.R.APP.P.

[39] *See Watts v. Oliver*, 396 S.W.3d 124, 133-134 (Tex.App.--Houston [14th Dist.] 2013, no pet.) (holding that complaint about calculation of interest may not be raised for the first time on appeal). *Cybiz, Inc. v. Gaskill*, No. 14-16-00405-CV, 2017 WL 1015560, 2017 Tex.App. LEXIS 2147, at *12 (Tex.App.--Houston [14th Dist.] March 14, 2017, no pet.).

[40] *See Samedan Oil Corp. v. Intrastate Gas Gathering, Inc.*, 78 S.W.3d 428, 457-458 (Tex.App.--Tyler 2001, pet. granted, judgm't vacated w.r.m.) (punitive damages).

[41] *See Basic Energy Service, Inc. v. D-S-B Properties, Inc.*, 367 S.W.3d 254, 262-264 (Tex.App.--Tyler 2011) (withdrawn pursuant to settlement).

ARGUMENT
PART TWO: STANDING

**10.    Old American waived any error as to the assignment of claims by failing to raise it in the trial court.** *See* Appellant's brief, pp.26-29.

Old American's "standing" arguments concern Frank Howard's assignment to the funeral home. *See supra*, p.15. First, Old American says that Howard only assigned his right to the policy proceeds; he <u>did not</u> also assign his Insurance Code claims.[42] Second, Old American says that, for public policy reasons, Howard <u>could not</u> assign his Insurance Code claims.[43]

Both issues--whether the claim was assigned and whether it was assignable--are questions of <u>capacity</u>, not <u>standing</u>. Unlike lack of <u>standing</u>, lack of <u>capacity</u> is waived if it is not raised in the trial court. And since Old American did not raise either issue in the trial court, they have been waived. Two recent cases from the Fifth Court of Appeals are directly in point. *See Fitness Evolution, L.P. v. Headhunter Fitness, LLC*, No. 05-13-00506-CV, 2015 Tex.App.LEXIS 11496 (Tex.App.--Dallas Nov. 4, 2015, no pet.), and *Douglas-Peters v. Choe & Holen P.C.*, No. 05-15-01538-CV, 2017 WL 836848, 2017 Tex.App.LEXIS 1836, at *23 (Tex.App.--Dallas March 13, 2017, no pet.).

---

[42] *See* Appellant's brief, p.27 ("Frank Howard clearly reserved his right  . . .  to pursue any statutory claims he might have under the Texas Insurance Code.").

[43] *Id.*, p.28 (arguing that any "such assignment would be invalid as a matter of law.").

47

In the first case, Fitness Evolution leased space in a shopping center from Gleneagles; and Joseph Mulroy guaranteed the lease. *See Fitness Evolution*, 2015 Tex.App.LEXIS 11496, at *8. Fitness Evolution assigned the lease to Headhunter Fitness, which could not pay the rent. *Id.* at *9-*10. In 2007, Fitness Evolution sued Headhunter Fitness, and Headhunter Fitness filed a third-party action against Mulroy. *Id*. at *10.

While that suit was in progress, Headhunter Fitness negotiated with Sagebrush Partners to lease space in a different shopping center. *Id.* at *11-*12. Headhunter Fitness asked Gleneagles to release it from the original lease, but Gleneagles refused. *Id.* at *13-*14. At that point, the suit settled. *Id.* at *16-*17.

In 2011, Mulroy and Fitness Evolution filed a new suit against Headhunter Fitness and Sagebrush. *Id.* at *19-*22. Mulroy, as assignee of Gleneagles, claimed that Sagebrush had tortiously interfered with the original lease (between Gleneagles and Fitness Evolution). *Id.* at *21 & *22 n.13. The trial court granted summary judgment denying that tortious interference claim. *Id.* at *34. Mulroy appealed.

On appeal, Sagebrush argued that Mulroy could not recover as the assignee of Gleneagles. *Id.* at *52-*53. In so doing, Sagebrush addressed the same two issues that we are concerned with in our case. First, Sagebrush argued that Gleneagles had "not specifically assign[ed]" the tortious interference claim to

48

Mulroy. *Id.* at *53.[44]   Second, Sagebrush argued that purported assignment of the

tortious interference claim "is void because it goes against public policy." *Id.* at

*55.[45]   The court of appeals rejected both arguments for the same reason:   they

involved question of <u>capacity</u>, not <u>standing</u>; and Sagebrush had not raised these

issues in the trial court. *Id.* at *54-*56.   Therefore, they had been waived.

As to the first issue--"the scope of Gleneagles's assignment to

Mulroy"--the court noted that, while "Sagebrush . . . referred to this as an issue

of '<u>standing</u>,' it is actually a challenge to whether Mulroy, as assignee of

Gleneagles's claims, can recover in the <u>capacity</u> in which he sued." *Id.* at *57

(emphasis added).

> Texas law is clear that a challenge to a party's privity of contract is a
> challenge to capacity, not standing.   . . .   While the question of
> whether a party is entitled to sue on a contract is often informally
> referred to as a question of 'standing' it is not truly a standing issue
> because it does not affect jurisdiction."   . . .

*Fitness Evolution*, 2015 Tex.App.LEXIS 11496, at *42 (citations omitted). [46]   But

---

[44] *See also, Fitness Evolution*, 2015 Tex.App. LEXIS 11496, at 56 (arguing that the purported assignment "does not specifically assign a tortious interference with an existing contract claim.").

[45] Sagebrush argued that "public policy prohibits Mulroy, as assignee of Gleneagles's claims, from recovering on the assigned causes of action because Gleneagles's tortious interference with an existing contract claims were not capable of assignment due to the fact that Mulroy, individually, was also the guarantor of the lease." *Fitness Evolution*, 2015 Tex.App. LEXIS 11496, at *55 (*citing Texas Farmers Ins. Co. v. Gerdes*, 880 S.W.2d 215, 218 (Tex.App.--Fort Worth 1994, writ denied).

[46] *Accord Douglas Peters*, 2017 Tex.App.LEXIS 1836 at 21-22.  *See also Vertical N. Am., Inc. v. Vopak Terminal Deer Park, Inc.*, No. 14-15-01088-CV, 2017 Tex.App. LEXIS 8944

Sagebrush had

> not file[d] a verified pleading challenging the capacity of Mulroy, as assignee of Gleneagles's claim, to sue on this basis, nor do they brief this lack of capacity on appeal. This issue was not preserved in the trial court. Accordingly, we do not address the merits of this argument . . .

*Id.* at *56-*57.[47] On this point the Court cited its earlier opinion in *John C. Flood of DC, Inc. v. SuperMedia, LLC*, 408 S.W.3d 645, 650-652(Tex.App.--Dallas 2013, pet. denied).[48]

Similarly, as to the second issue, Sagebrush contended "that the assignment of Gleneagles's claims is void because it goes against public policy." *Id.* at *54-*55. But here again, the court held that "[t]his argument challenges the qualifications of Mulroy, as assignee of Gleneagles's claim, to litigate Gleneagles's claim." *Id.* at *55.

> Although the Sagebrush Group referred to this as an issue of "standing" it is actually a challenge to whether Mulroy, as assignee of Gleneagles's claim, can recover in the capacity in which he sued.

*Id.* at 53 (emphasis added).[49] Once again, however,

> [t]his issue was not preserved in the trial court. Accordingly, we do

at *3 (Tex.App.--Houston [14th Dist.] Sept. 21, 2017, no pet.) ("A challenge to who owns a claim raises the issue of capacity, not standing.").

[47] *citing* Rule 33.1, TEX.R.APP.P. *See also* Rule 93(2), TEX.R.CIV.P. (requiring verified plea of lack of capacity).

[48] *See also King-Mays v. Nationwide Mut. Ins. Co.*, 194 S.W.3d 143, 145 (Tex.App.--Dallas 2006, pet. denied) (applying same reasoning to claim of subrogation).

[49] *citing John C. Flood*, 408 S.W.3d at 640.

not reach the merits of this argument that the Sagebrush Group labels as "standing."

*Id.* at 56.

In *Douglas-Peters*, a law firm owned a claim against a former client for unpaid attorney's fees. 2017 Tex.App. LEXIS 1836, at *5-*6. It assigned the claim to a new law firm; and the new firm sued the former client for the unpaid fee. *Id.* at *6-*7. The former client contended that the assignment

> is void because it is against public policy. She argues that the assignment of claims by attorneys against their clients are a "legal corollary" to the assignment of legal malpractice claims, which is against public policy."

*Id*. at *27. Here again, the court held that this question--whether assignment of claims for unpaid attorney's fees violates public policy--involved a question of <u>capacity</u>, not <u>standing</u>. *Id*. at **21-22 (citing cases).

Unlike *Fitness Evolution*, the court in *Douglas-Peters* held that the issue of capacity had been preserved. Therefore, the court could "address Douglas-Peters' capacity arguments." *Id*. at *25. Even so, the former client had not adequately briefed the public policy issue, and for this reason, the court declined the "invitation to invalidate the assignment of claims for attorneys' fees on the basis of public policy." *Id.* at *28.

In our case, Old American is making these same arguments. It says (i) that Frank Howard never assigned his Insurance Code claim and (ii) that his Insurance Code claim could not be assigned on public policy grounds. But, as in

*Fitness Evolution*, these issues were never raised in the trial court.

Old American never filed a verified pleading under Rule 93(2).[50]

Nor did it raise this issue in its summary judgment response (594-606).[51]  Old

American did not raise the "capacity" issue--which it erroneously calls a

"standing" issue--until it filed its brief in this Court, and for that reason, both

arguments--whether the claim was assigned and whether it was assignable--have

been waived.  *See Nootsie Ltd. v. Williamson Cty. Appraisal Dist.*, 925 S.W.2d

659, 662 (Tex.1996) (holding that "Nootsie first questioned the district's capacity

in its briefing before this Court.   Therefore, Nootsie has waived its complaint

about capacity.").[52]

## 11.    Alternatively, Lincoln has standing to assert its own claims for "bad faith" and misrepresentation under Section 541.151 of the Code.

According to Old American, Lincoln is contending (i) that Frank

Howard, the beneficiary, assigned his Insurance Code claims to Lincoln and (ii)

that Lincoln is asserting <u>the assigned claims</u>.   And because those claims have not

been assigned (and because they are not assignable), Lincoln has no standing, or so

---

[50] *See* Defendant's Original Answer (93).   Old American never filed an answer in the County Court at Law.  *See* docket sheet (665).

[51] *Cf. John C. Flood*, 408 S.W.3d at 655 ("The problem with appellant's argument is that their response to appellee's summary judgment motions did not raise the issue of SuperMedia's lack of capacity to bring suit.").

[52] *Accord Town Ctr. Mall v. Dyer*, No. 02-14-00268-CV, 2015 Tex.App. LEXIS 10213, at **7-8 (Tex.App.--Fort Worth Oct. 1, 2015, pet. denied).

the argument goes. *See* Appellant's brief, pp.26-27. We have just demonstrated that both arguments involve lack of capacity, not lack of standing, and they have been waived. *See supra*, p.47. Now, in the alternative, we say that Lincoln has standing to assert <u>its own claims</u> directly under the Code. In other words, standing is conferred by statute.[53]

In this part of the argument, we will address Section 541.151 of the Insurance Code, which gives Lincoln standing to sue for "bad faith" and misrepresentation. And in part 12, we will address section 542.060, which gives Lincoln standing to sue for failure to make "prompt payment."

As previously noted, the Code provisions prohibiting "bad faith" and misrepresentation are found in Chapter 541, Subchapter B, of the Code. The remedial provisions are found in Chapter 541, Subchapter D, entitled "Private Action for Damages." Section 541.151, entitled "Private Action for Damages Authorized," reads as follows:

> <u>A person</u> who sustains actual damages may bring an action against another person for those damages caused by the other person engaging in an act or practice:
>
>   (1)  defined by [Chapter 541] Subchapter B [of the Insurance

---

[53] *See generally In re Sullivan*, 157 S.W.3d 911, 915 (Tex.App.--Houston [14th Dist.] 2005, no pet.) (holding that "the judge-made criteria regarding standing do not apply when the Texas Legislature has conferred standing through a statute. In statutory standing cases, such as this, the analysis is a straight statutory construction of the relevant statute to determine upon whom the Texas Legislature has conferred standing and whether the claimant in question falls in that category.") (internal citations omitted).

Code] to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance; or

(2) specifically enumerated in Section 17.46(b), Business & Commerce Code, as an unlawful deceptive trade practice if the person bringing the action shows that the person relief on the act or practice to other person's detriment.

TEX.INS. CODE §541.151 (emphasis added). [54] Here we are concerned with sub-paragraph (1), which provides a remedy for Lincoln's "bad faith" and misrepresentation claims.[55]

To recover for an unfair practice, as defined by Chapter 541, Subchapter B, of the Code (which includes "bad faith" and misrepresentation), one must qualify as "a person" under the following statutory definition:

"Person" means an individual, corporation, association, partnership, reciprocal or interinsurance exchange, Lloyd's plan, fraternal benefits society, or other legal entity engaged in the business of insurance, including an agent, broker, adjuster, or life and health insurance counselor.

TEX.INS.CODE §541.002(2) (emphasis added).

The phrase "engaged in the business of insurance" does not restrict the definition of "person." Rather, it expands that definition to include those

---

[54] *See* Acts 2003, 78th Leg., ch.1274 §2 (eff. April 11, 2005) (repealing TEX.INS.CODE art. 21.21 §16(a)).

[55] Again, Lincoln did not seek summary judgment under the DTPA, which is the subject of sub-paragraph (2). *See supra*, p.10 n.7.

"engaged in the business of insurance." This issue was decided in 1978, when the

statute read as follows:

> Any person who has been injured by another's engaging in any of the practices declared in Section 4 of this Article or in rules or regulations lawfully adopted by the Board [of Insurance] under this Article to be unfair methods of competition and unfair and deceptive acts or practices in the business of insurance or in any practice defined by Section 17.46 of the Business and Commerce Code, as amended, as an unlawful deceptive trade practice may maintain an action against a company or companies engaging in such act or practices.

TEX.INS.CODE art. 21.21 §16(a).[56]  Under that version of the statute, "person" was

also defined as follows:

> "Person" shall mean any individual, corporation, association, partnership, . . . and any other legal entity engaged in the business of insurance . . .

*Id.* §2(a) (emphasis added).[57]

Initially, the lower courts held that the phrase "engage in the business

of insurance" limited the scope of "persons" who could sue.  For example, one

court held that:

> Art. 21.21 does not confer a private cause of action upon individuals for alleged unfair practices.  One must be "engaged in the business of insurance" to bring suit under art. 21.21, TEX.INS.CODE.

---

[56] *See* Acts 1951, 52nd Leg., ch. 491, amended by Acts 1957, 55th Leg., p.401, ch. 198; Acts 1969, 61st Leg., p.2051, ch. 706, §1 eff. June 12, 1989; Acts 1973, 63rd Leg., p.335, ch. 143, §§2(a)-2(c), eff. May 21, 1973 (*quoted at Hermann Hosp.*, 776 S.W.2d at 251).

[57] *quoted at Royal Globe*, 566 S.W.2d at 726.

*Ceshker v. Bankers Commercial Life Ins. Co.*, 558 S.W.2d 102, 104 (Tex.Civ.App.
--Tyler 1977) (emphasis added).[58]   But the Supreme Court <u>disagreed</u>:

> We disapprove the [above] holding which construed the Code to limit
> the term "person" to one who is engaged in the business of insurance.

*Ceshker v. Bankers Commercial Life Ins. Co.*, 568 S.W.2d 128, 129 (Tex.1978).
*Accord Royal Globe Ins. Co. v. Bar Consultants, Inc.*, 566 S.W.2d 724, 726
(Tex.Civ.App.--Austin 1978) ("The Texas Supreme Court in a recent per curiam
opinion disapproved a court of civil appeals' restrictive reading of the definition of
'person' as used in Section 16 of Article 21.21 of the Insurance Code"), *aff'd*, 577
S.W.2d 688 (Tex.1979); *Hermann Hosp. v. Nat. Standard Ins. Co.*, 776 S.W.2d
249, 251 (Tex.App.--Houston [1st Dist.] 1989, writ denied) ("The Texas Supreme
Court, in 1978, held that this statute does not require that the injured party be a
person who is engaged in the business of insurance.").

By way of example, an insured party is obviously not "engaged in the
business of insurance."  Even so, in 1988, the Supreme Court held that <u>an insured
party</u> was also a "person" who could sue under article 21.21 §16(a).  *See Vail v.
Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 134 (Tex.1988).   This issue
has now been decided.   Any person or entity has standing to sue for an unfair
practice defined by Chapter 541, Subchapter B, which includes "bad faith" and

---

[58] *writ ref'd, n.r.e.*, 568 S.W.2d 128 (Tex.1978).

"misrepresentation." [59]

Despite this broad statutory language, the Supreme Court has limited the definition of "person" in one kind of case, to-wit: "bad faith" claims brought by a "third party." In *Allstate Ins. Co. v. Watson*, 876 S.W.2d 145 (Tex. 1994), the Court held that a car wreck plaintiff could not sue the defendant's liability carrier under article 21.21 §16(a) because the plaintiff was asserting a "third-party" claim. *Watson*, 876 S.W.2d at 149-150. There were practical reasons for this decision. To allow a third-party plaintiff to sue under article 21.21 would place conflicting duties on the insurer. The insurer would owe one set of duties to its insured and another set of duties to the third party. *Watson*, 876 S.W.2d at 150. Accordingly, a "third-party" claimant asserting a "bad faith" claim did not qualify as a "person," despite the broad statutory language.

But *Watson* applies only to "bad faith" claims. On the other hand, the courts have allowed third-party claimants to sue for misrepresentation.[60] In any event, Lincoln is not a "third-party" claimant, that is, it is not adverse to the estate

---

[59] *See also* TEX.INS. CODE §541.001 & 541.008 (Chapter 541 "shall be liberally construed and applied to promote the underlying purposes" which are to prohibit "unfair or deceptive act or practices" in the "business of insurance.").

[60] *See generally Royal Globe Ins. Co. v. Bar Consultant*, 577 S.W.2d 688 (Tex.1979); *Hermann Hosp. v. Nat. Standard Ins. Co.*, 776 S.W.2d 249 (Tex.App.--Houston [1st Dist.] 1989, writ denied); *Webb v. Int'l Trucking Co.*, 909 S.W.2d 220 (Tex.App.--San Antonio 1995, no writ); *Brown & Brown of Tex., Inc. v. Omni Metals, Inc.*, 317 S.W.3d 361 (Tex.App.--Houston [1st Dist.] (2010, pet. denied).

of Clara Barnes, the insured, or to Frank Howard, the beneficiary.

**12.  Lincoln has standing to assert a "prompt payment" claim under section 542.060 of the Code.** *See* Appellant's Brief, pp.30-32.

As previously noted, the "prompt payment" claim is based in Sections 542.055 and 542.058 of the Insurance Code. *See supra*, p.32.   The remedy reads as follows:

> If an insurer that is liable for a claim under an insurance policy is not in compliance with this subchapter, <u>the insurer is liable to pay the holder of the policy</u> or the beneficiary <u>making the claim</u> under the policy, in addition to the amount of the claim, interest on the amount of the claim at the rate of 18% a year as damages, together with reasonable attorney's fees.

TEX.INS.CODE §542.060 (emphasis added).   In *United States v. United Servs. Auto Ass'n*, 431 F.2d 735 (5th Cir.1970), *cert. denied*, 400 U.S. 992 (1971), the child of an Air Force officer received treatment at a government hospital, and "the United States brought suit on the medical payment provision of the officer's automobile insurance policy."   The United States sued the insurance company for penalties and interest under TEX.INS.CODE §3.62, the predecessor of the current statute. *Id*. at 2. In affirming an award against the insurance company, the Fifth Circuit held that the United States was "a 'holder' of the policy within the terms of the Texas statute." *Id*. at 3.[61]

---

[61] *citing Republic Nat. Life Ins. Co. v. Spillars*, 363 S.W.2d 373, 376 (Tex.Civ.App.--Waco 1962), *rev'd on other grounds*, 368 S.W.2d 92 (Tex.1963).  *See generally Encompass Office Solutions, Inc. v. Ingenix, Inc.*, 775 F.Supp.2d 938, 947-948 & n.1 (E.D.Tex.2011).

Similarly, under ERISA, "[a] civil action may be brought by a participant or beneficiary." 29 U.S.C. §1132(a)(1) (emphasis added), and a health care provider, or its assignee, can sue under this provision to collect benefits owed to covered employees. *See Tango Transport v. Healthcare Financial Services, LLC*, 322 F.3d 888, 889-890 (5th Cir.2003) (allowing financial service company to sue on claims assigned by ERISA participant).

In reaching these decisions, courts have reasoned that "granting derivative standing to the assignee of health care providers helps plan participants and beneficiaries by encouraging providers to accept participants who are unable to pay up front." *Id.* at 894. Thus, "to bar healthcare providers from assigning their rights under ERISA . . . would chill health care providers' willingness to accept a patient." *Id.* Similarly, a lender "will only be willing to purchase an assignment from a healthcare provider if they can be assured that they will be afforded standing to sue for reimbursement." *Id.*

Old American cites *Cash Rent-a-Car, Inc. v. Old American County Mut. Fire Ins. Co.*, No. 01-09-00021-CV, 2010 WL 143482, 2010 Tex.App. LEXIS 250 (Tex.App.--Houston [1st Dist.] Jan. 4, 2010, no pet.), for the proposition that "only [the] insured could assert a claim under Chapter 542." Appellant's brief, p.31. But that decision was based on a provision denying "prompt payment" to third-party claimants. *See* TEX.INS.CODE §542.051(2)

("Claim" means a <u>first party claim</u> that is made by an insured or policy holder")

(emphasis added). Again, Lincoln is not a third-party claimant. *See supra*, p.58.

**13.     Alternatively, the Insurance Code claims
         were assigned and they were assignable.**

**Were the claims assigned?** "Absent specific circumstances, causes

of action in Texas are fully assignable." *Fitness Evolution*, 2015 Tex.App. LEXIS

11496, at *43.[62] It is undisputed that Howard assigned his benefits under the

policy. and "[a]n assignment to receive payment of benefits necessarily

incorporates the right to seek payment. [T]he right to receive benefits would be

hollow without such enforcement capabilities." *Encompass Office Solutions, Inc. v.

Ingenix, Inc.*, 775 F.Supp. at 949.[63]

**Were the claims assignable?** Most kinds of claims are assignable,

but in a few kinds of cases

> an assignment may be invalidated by the courts because it is found to
> offend public policy. The Texas Supreme Court has held that certain
> types of assignments are invalid because they violate public policy:
> (1) an assignment of a cause of action that works to collude against an
> insurance carrier; (2) an assignment of a legal malpractice claim; (3)
> an assignment that creates a Mary Carter agreement; (4) an
> assignment of the Plaintiff's cause of action to a joint tortfeasor of the
> defendant; and (5) an assignment of interest in an estate that distorts
> the true positions of beneficiaries.

---

[62] *Accord Douglas-Peters*, 2017 Tex.App.LEXIS 1836, at *22.

[63] *quoting Conn. State Dental v. Anthem Health Plans*, 591 F.3d 1337, 1352 (11th Cir. 2009).

*Douglas-Peters*, 2017 Tex.App. LEXIS at *23 (*citing PPG Industries*, 146 S.W.2d at 87 n.31.

*PPG Industries* involved a building, completed in 1978, which included more than 12,000 windows manufactured and installed by PPG. *Id.* at 83. PPG replaced some of the windows in 1982. *Id.* The building was sold in 1989 and all of the seller's warranties were assigned to the purchaser. More window problems appeared in 1991, and the purchaser for breach of warranty. *Id.* The jury awarded $4.7 million as damages. *Id.* "The trial court trebled the award under the mandatory provisions of the 1973 DTPA." *Id.* PPG appealed. The Supreme Court upheld the award of actual damages for breach of warranty but it reversed the award of treble damages under the DTPA because the original owner's DTPA claim was not assignable on public policy grounds. *Id*. at 83-84.

In an opinion by Justice Scott Brister, the court distinguished between "plac[ing] the power of treble damages in the hands of aggrieved parties" and "plac[ing] it in the hands of those considering <u>litigation for commercial profit</u>." *Id.* at 85 (emphasis added). Thus, the Court held that "the DTPA claim could not be assigned lest they fall into the hands of "<u>arbitrageurs</u>" or "<u>wealthy entrepreneurs</u>," who "<u>buy DTPA claims cheap and sell them dear</u>." *Id.* at 86-87 (emphasis added). These concerns are not applicable to our case.

Lincoln is not an "arbitrageur" or "wealthy entrepreneur" who "buys

claims cheap and sell them dear." Rather, like other factoring companies which operate in this area, Lincoln merely provides up-front cash to pay for funerals. By assigning rights under a life insurance policy, a beneficiary can, at a difficult time, obtain ready cash to provide a funeral for a loved one. The same policy arguments that underlying "derivative standing" in ERISA cases are also at work here. Allowing factoring companies to have standing will help provide funerals to those "who are unable to pay up front." To bar the beneficiaries of those insurance policies from assigning their rights under the Insurance Code will chill a factoring company's willingness to provide up-front cash for funerals. *See supra,* p.59.

Moreover, *PPG Industries* involved a DTPA claim, but in our case Lincoln did not seek or obtain summary judgment under the DTPA. Old American says that the court in *Lee v. Rogers Agency*, 517 S.W.3d 137 (Tex.App.-- Texarkana 2017, no pet.), "held that the owner of a life insurance policy could not validly assign his [bad faith] claims to a trustee." Appellant's brief, p.28. But *Lee* did not involve the validity of assignment. Rather, in that case, insurance code claims were "relinquished when the policies were transferred to [a] Trust." *Id.* at 146.

The *Lee* opinion does contain a lengthy footnote noting that "the Supreme Court has <u>not</u> addressed whether Insurance Code claims are assignable." 517 S.W.3d at 146 n.3 (emphasis added). It does, however, note that some federal

courts have extended the *PPG* holding to Insurance Code claims.   Two of these cases involve assignability of "bad faith" claims.[64]   The footnote also notes that federal district courts have taken opposite positions as to the assignability of "prompt payment claims." [65]   Certainly, in this regard, the notion that "wealthy entrepreneurs" would somehow traffic in claims for 18% interest and attorney's fees is ridiculous.   In our case, public policy factors weigh in favor of assignability.

Yet, life insurance companies, like Old American, are obviously willing to treat factoring companies no differently from the way they treated beneficiaries before the enactment of the Insurance Code.   They hold on to the money until the last minute, and when they are finally sued, they simply pay up and say that they have complied with the insurance contract.   But they have not complied with extra contractual duties imposed by the Insurance Code, and this Court should hold that "prompt payment" claims in this case are assignable.

---

[64] *See Great Am. Ins. Co. v. Fed. Ins. Co.*, No. 3:04-CV-2267-H, 2006 WL 2263312, 2006 U.S.Dist. LEXIS 55038, at *29-*30 (N.D.Tex. Aug. 8, 2006); *Launius v. Allstate Ins. Co.*, No. 03-06-CV-0579-B, 2007 WL 113547, 2007 U.S.Dist. 28286, at *14-*15 (N.D.Tex. Apr. 17, 2007).   Old American also cites *Montoya v. State Farm Mut. Auto Ins. Co.*, No. 16-00005 (RCL), 2016 WL 5942327, 2016 U.S.Dist. LEXIS 141, 322, at *18 (W.D.Tex. Oct. 12, 2016). *See* Appellant's Brief, p.31.

[65] *Cf. Berkley Regional Ins. Co. v. Philadelphia Indem. Ins. Co.*, No. A-10-CA-3662-SS, 2011 WL 9879170, 2011 U.S.Dist. LEXIS 155, 852, at *22-*27 (W.D.Tex. Apr. 27, 2011); *with American Southern Ins. Co. v. Buckley*, 748 F.Supp.2d 610 (E.D.Tex.2010).

**14.** **Lincoln does not have standing as to the claim under Section 542.003 of the Insurance Code.** *See* Appellant's brief, pp.29-30.

We also alleged that Old American made misrepresentations in violation of Section 542.003 of the Insurance Code, which prohibits an insurer from "knowingly misrepresenting to a claimant pertinent facts or policy provisions relating to coverage at issue." TEX.INS.CODE §542.003(b)(1). *See* Motion, pp.25-340 (203-208). This particular provision is found in Chapter 542, Subchapter A, which concerns dealings between insurers and the Texas Department of Insurance. It requires an insurer to keep a record of complaints and to report them to the Department.[66] Also, the Department has authority to investigate handling of claims and to issue cease and desist orders and to recover attorney's fees.[67] The remedy for this subchapter in found in Section 542.012, which allows recovery of attorney's fees. As it turns out, that remedy is only available to the Department of Insurance, and we now concede that we do not have standing to assert this particular claim for misrepresentation.

In this regard, a number of courts have held that there is no private cause of action under Chapter 542, Subchapter A; and Old American cites those cases on pages 29 and 30 of its brief. However, one of these cases goes too far,

---

[66] *Id*. §542.005 & 542.006.

[67] *Id*. §542.010 & 542.012.

saying that there is no private cause of action <u>for all of Chapter 542</u>.  *See KLZ Diamond Tools, Inc. v. TKG Gen. Agency, Inc.*, 2016 Tex.App.LEXIS 7639, at \*19 (Tex.App.--Dallas July 18, 2016, no pet.) ("Chapter 542 does not provide a private cause of action for violations of its terms.").   That statement is dicta, and it is overbroad.   Like all of the cases cited by Old American, that case involved Section 542.003.   And of course, Section 542.003 falls into Chapter 542, <u>Subchapter A</u>.  By contrast, the law is well settled that there <u>is</u> a private cause of action for bad faith and misrepresentation claims, which fall under Chapter 542, <u>Subchapter B</u>.

PRAYER

The judgment of the trial court should be affirmed.   Costs should be adjudged against Old American.

Respectfully submitted,


<u>/s/ Frank Gilstrap</u>          07964000

HILL GILSTRAP, P.C.
1400 West Abram Street
Arlington, Texas  76013
(817) 261-2222
(817) 274-9724 fax
fgilstrap@hillgilstrap.com
ATTORNEY FOR APPELLEE

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2017 a copy of the foregoing

Appellee's Brief was served on the following counsel of record:

David R. Sweat
3705 W. Green Oaks Blvd., Ste. C
Arlington, Texas  76016

/s/ Frank Gilstrap

## CERTIFICATE OF COMPLIANCE

I certify that this brief was prepared using Microsoft Word 2013, and

that, according to that program's word-count function, the sections covered by

TRAP 9.4(i)(1) contain 12,667 words.

/s/ Frank Gilstrap